Can I say, in this case, despite the very long briefs, it seems to be a very simple issue and I'm not sure you need the 15 minutes, but do the best you can. I'm not using the time if you don't need it. Good morning, Your Honors. It may please the Court, Dan Bernheim on behalf of Navigator Specialty Insurance Company, and I would like, if I may, to reserve three minutes for rebuttal. Okay. And, Your Honor, I would agree with your assessment. This is a straightforward issue. What brings us here today is questioning the application of the one-year statute of limitations, which barred a claim for the improper payment of 10 checks, which totaled $981,000 and change, which were honored over forged endorsements by California Bank and Trust, frequently referred to as CB&T. There's no dispute that the items referenced were all paid over forged endorsements, which would constitute a breach of the contracted deposit, as well as Section 4401 of the Code. The only issue is whether applying the statute of limitations by determining that the claim accrued upon the issuance of the bond was valid. If I may, I know that you all reviewed those lengthy briefs and the background, but a couple of key points in time here. So Deakin, which we stand here as a suburb in reference to Navigators, Deakin Construction is one of the largest residential and multi-home builders out on the West Coast. They were in the process of building a 152-room hotel. They had hired Champion to do some of the framing and decking and columns, and Champion in turn hires its own subcontractors and vendors, and payments are all pursuant to AIA contracts, where you submit progress payments, architect reviews, release of claims, and everything else. And what had occurred is that the first check that issue went out in January 20th, 2016, payable to Champion and one of its suppliers known as CalPly. That check was for $850,000 and changed. Another series of checks went out in April. Can you tell me what's the interplay between California Code of Civil Procedure, Section 340, and California Commercial Code 4406? I know there's California state courts saying they dovetail, but can you explain that a little bit further? Yeah, well, what the district court did in dovetailing that made the determination... Some California state courts seem to suggest that as well. The one-year statute of limitations does not have a point in time for accrual. Neither does the Uniform Commercial Code limitation statute 4111, which talks about three years, have a point in time for when it accrues. So in order to make the determination that it accrued upon the issuance of the statement, the district court said, I'm going to look first to 4406F. And what that provides is that there's a one-year limitation for making claims for alterations of a check or a customer signature, commonly referred to as a drawler signature. It does not reference forged endorsements. But before that one-year limitation can be imposed, you have to comply with 4406A. And that means the bank has got to send out your statements and inform you of what checks have been issued and the dates and everything else and provide you either checks or an opportunity to get them. So when the district court took a look at this and dovetailed 340C with 4406, the problem that we find there is that only relates to those forged drawler signatures, not to forged endorsements. So what does the actual governing limitations period say? Is that 340? If you look, yeah, the statute of limitations is 340C, which says one year, it includes one year for forged endorsements. And the history of that statute, and I do want to come back to your ultimate question, if I may. The history of that statute goes back to 1905, where the legislator first had the statute, but it did not include forged endorsements. In 1929, it did include it, and it indicated that it sought to fix a definitive time which no claim could be asserted based upon the alleged forging or raising of a check for which there was a duty of the depositor to detect. Duty of the depositor to detect. And here's where the problem lies. 4406 in the commentary, which has had various changes, at this time in 1991 or 1992, made the specific change that there is no duty upon the depositor to go ahead and check a statement for a forged endorsement. Or not check a statement, check make to do any investigation about a forged endorsement. And both the code, case law, and common sense indicate case Y. So dealing with common sense, if any of your honors were to write me a check, and then you received it back in your statement, you would have no idea if that's my endorsement or not. I understand the common sense part. But just to be clear, because I think Judge Berzon asked what's the language. And maybe I've got it wrong. I've tried to put it back together. But sufficient, you have to provide statements sufficient to allow the customer to reasonably identify the items paid. Once that's done, does that trigger the one-year statute of limitations? Well, it does under 4406F, which is then limited to both the forged drawler's signature and alterations. But 4406F itself, it says what you have to do with one year is notify the bank. That's correct. So it's not exactly a limitations period for a file. It is not a statute of limitations. So this is what Judge Lee was asking. I mean, there's an assumption being made that the two are going to be treated the same. But the reality is that if you then go ahead and bring a claim, and that claim is predicated on the fact that there's a forged endorsement, you're precluded from doing that. So you're correct, Your Honor. It's not a strict statute of limitations. But if you haven't noticed within a year. That's right. Then you could go ahead and do that. But the limitations period doesn't say anything about the statement. It says that it's a year. Right? That's correct. And so the question is a year from what? That's right. And it's been surmised that because of 406, it's a year from the statement, not a year from the, with regard to drawer. I understand that we're only talking about signatures on a check. Just a minute. I'm sorry. So they've been integrated in the sense that it's understood that for drawer forgeries, it's a year from the statement, not a year from the forgery. Correct. And then the question is whether the same rule or a more lenient rule applies to endorsements, essentially. So you're arguing it's not a year from the endorsement. It's not even a year from the drawer forgery. If it's a drawer forgery, it's a year from the statement. And it can't be a year from the statement for the endorsement because you can't tell anything from the statement. That's essentially what you're saying. Essentially so. All right. So what is a year from then? Right. So what is the trigger date? That's right. So, right. So when would it accrue is the question. And the question is whether it would accrue when you know or when you should have known. So a discovery rule. And, in fact, there's support for that. I'm sorry. The discovery rule, basically. Well, it's really not a discovery rule. There's a fine distinction between when an action accrues and discovery, the classic example that, you know, sponges are left in, you know, the patient and they don't know about it until they have pain. The real action accrues when the sponge is left, but you don't know it until you have pain. That would be a discovery rule. That's actually not my understanding. My understanding is that even in that instance, it accrues when you're – the real question is whether it's inquiry discovery or knowledge discovery. But in either event, it's still accrual as of whatever the trigger date is. Well, that's correct. And that's why I say it's not – it may be a fine line here whether it – because I don't believe it is really a tolling and discovery issue. And so when it accrues, there is a very instructive case that I would direct the court to, and that's U.S. Electronics Corporation versus Citibank of Delaware. And in that situation, DirecTV, which is a subsidiary of U.S. Electronics, issues a check for $439,000 to American Express. The check is stolen. The endorsement is then forged. And the case comes up, similar to this one, on the forged endorsement. And the court notes that it says that the check was cashed in January 1999, and DirecTV, I quote, was aware of the forgery and that the American Express check had been cashed by April 15, 1999. A complaint isn't filed until May. But nothing in the case quite turned on that because it was whether it was a New York or California statute. Well, that's correct. They were focusing on whether it was New York or California, and they also were focusing on whether the code had changed such that California now would apply the three-year statute, which is in the code, as opposed to the one-year statute. And it's the rationale in that case, which not only did it focus on aware, and never once does it say statement, but it's the rationale in that case, which I think becomes the manner in which this court can consistently hold that the one-year applies, that the accrual isn't on the basis of the statement. So let me ask you something. Does it matter? I'm cutting you off because I like your brief. You're sort of going on about the obvious. I mean, I couldn't understand why the brief was going on and on and on about the same thing over and over again. But in any event. I'll throw my partner under the bus. Yes, throw him under the bus. He's back. Well, let's assume we think you're conceptually right, that at least that the statement is not the trigger date. All right. Then there's a question of whether, I mean, how much you had to know. I mean, you knew there was some kind of a problem going on when the employees were running around  and eventually figured out what the problem was. Eventually, not that long, a month or two. Do we do anything more with this case than say that the judge was wrong about, from your point of view, if we agree with you that the statement is not the trigger date? Do we stop at that point and remand, or do we decide anything else? Yeah, well, I would like to say that, you know, under 4401, if the statute of limitations doesn't apply, then indeed you're very right. I'm not saying the statute of limitations. I want to know whether even as to the statute of limitations. Yeah. We decide anything other than it isn't the ‑‑ there is some kind of a knowledge requirement, whether it is actual knowledge or inquiry knowledge or something. We're not going to get into it. Right. You would have to remand, you know, what did they know and when did they know it and what was reasonable. Because we can't figure that out. We argued, for example, what you were saying, that the fact that there were some people complaining about, you know, not getting paid, that that would be the converse of someone misappropriating, you know, $900,000 plus because they'd be cash flush. You'd think they would pay some of their people. So you would have to remand it. We tried to argue that maybe you'd end up saying, all right, if the statute of limitations doesn't, you know, is not applicable, then, and the case is timely, that under 4401 we would prevail. But there was an outstanding motion for leave to amend, which I think the court would have to decide. We may think it's futile. But does it matter on any set of facts in this case, whether it's inquiry notice, I mean, triggered by the fact that there were people who weren't getting paid, or actual knowledge? I don't believe it is inquiry notice, Your Honor. I think it is more ‑‑ I didn't ask you that. I asked you does it matter. Oh, I'm sorry. Good question on the timing of that. I think that it would because I don't know when that inquiry notice would begin. Well, I gather they're arguing it began when the people were going on strike or something because they weren't getting paid. The record isn't clear. I know that July 11 was a date when it was known of the forged endorsement.  But I don't know the specific date and the complaint was filed in June, Your Honor. So I can't honestly, you know, answer that. And the argument for it not being inquiry notice but actual knowledge is? Because the ‑‑ in this particular case, I don't think any of the situations which caused the inquiries, what was going on, would have led one to ascertain when the checks were forged. And the problem is under the code, the code and the common states. I mean, even if they were forged because these people could not have got paid just because their employer was bouncing checks because they didn't have the money having nothing to do with forgery. That's absolutely correct. And the code states there's no duty of inquiry. The code is predicated upon the depository bank having the responsibility of checking endorsements. That's the whole scheme behind this. How are they supposed to check them? That's one of the questions I had is, I mean, I get it that the depositor or, you know, the bank holder, when he gets the return check, he can't check it. But how's the bank in any better position? Well, the depository bank, so generally people bring checks to their own bank once upon a time. Generally they don't bring them at all. Once upon a time, they would actually go check signature cards and that's how this always developed. But you have two endorsements. How do you know? I mean. Well, here ‑‑ and that was answered in this case, Your Honor. CB&T explained themselves that if they were the depository bank, they would have required a second signature guarantee. And that's what's done frequently, certainly with an $850,000 check. That's fairly common practice. Well, maybe the $850,000 check is a different story. But in general, people don't go into banks and cash checks anymore. Look, the truth of the matter is having done this for, you know, 30 plus years, you take your checks and you go to a remote ATM. Exactly. And you deposit there. No one's checking anything, you know, at all. Right. And that becomes a risk of loss that's taken by the depository bank for going ahead and doing this and not having all of the expense of the personnel of grabbing all the checks and looking at them. But the code has always stated that the risk goes with the one who's in the best position to go ahead and prevent it. Well, it hasn't stated it, but it's been on that premise. Okay. Thank you very much. Thank you. Good morning, Your Honors, and may it please the Court. Todd Beebe for California Bank and Trust. I'd like to begin with where the discussion left off, which is the question of if one would assume for the sake of argument that a delayed discovery rule applies. All right. So you're just going to – I mean, to tell you the truth, it seems to me it does. And if you want to give up the argument, it's fine with me. But it seems to me that's what you're doing. You're essentially saying that just your judge applied the wrong rule. I'm not giving that up at all, and I'll get to that. But I think the second half of the argument is so clear that I want to jump up and down on that for a minute, if I may. If you assume that for the sake of argument, then the question is, does the statute begin to run upon inquiry notice, or does the statute begin to run upon conclusive confirmation of the ultimate facts? Well, it might be somewhere in the middle. I mean, what we have here is a situation which, you know, in the ordinary course, the fact that some subcontractors' employees weren't getting paid doesn't necessarily lead to any suggestion. And the most likely reason is because the subcontractor is just out of money and isn't paying them. And how you would get to the notion that they were forging checks, I don't know. Well, let me get there. That is important in this case because if inquiry notice is enough, we have this dramatic event where all of the employees of the subcontractor are surrounding the project office. You know, I think of those old movies where you have the peasants storming the castle with pitchforks and torches. They're angry because they haven't been paid. And my colleague's optimism to the contrary notwithstanding, people who are bouncing checks are not cash flush. The fact that they're bouncing checks means that they don't have cash. Correct. Now, 99 times out of 100, a defendant arguing delayed discovery has to say that a plaintiff who was not suspicious should have been suspicious. Or a defendant has to say that a plaintiff who was suspicious but did not take action should have taken action. This case is remarkable because the undisputed record is that the customer actually was suspicious. It was in the separate statement of facts. And you think we could decide that? Pardon? You think we could decide that without remanding it? Absolutely. Because that was in the separate statement of facts. It was acknowledged by navigators to the undisputed that knowledge of the fact that the payroll checks bounced prompted Deakin to reach out to the joint payees on these checks and ask them whether they'd gotten the money or not. But that issue was never presented to the district court because the district court just assumed it triggered upon the statement. So it seems like we don't have a full record. I understand you're citing to that, but maybe there's additional evidence out there. There's the admissions of Deakin's project manager that are in the record that knowledge that the payroll checks bounced prompted Deakin to reach out to the joint payees. Yes, but what were they suspicious of? They still weren't suspicious that somebody was forging the checks. Well, the question was, did they get the money? Okay. That is the ultimate question. Did it get lost in the mail? That's a different question. I mean, it's so unlikely that this is what happened, that the fact that they made inquiry because they wanted to find out if there was a problem with getting the money isn't the same as I want to find out whether somebody's forging $850,000 checks. If the checks got lost in the mail, then potentially we'd be talking about two forged endorsements rather than one. But that leads to the same place, that Deakin was suspicious that the intended payee did not receive the money, and Deakin actually was suspicious. I'm not saying they should have been. I'm saying they actually were. That fact is in the record. It is undisputed. And the second fact is that Deakin – The only fact that was in the record is that they were suspicious of whether they were getting paid. It's not that they were suspicious that there was fraudulent endorsements occurring. One means the other. If the check is payable to CalPly – I think that's sort of the question. And CalPly didn't get the money, if the check cleared, obviously – I think that's a more difficult question, is if they're not getting paid, is that enough to trigger, you know, you should have known or you should have done it. But I think that goes beyond where we're at. I actually – I'm not totally – I want to be more sure about the argument on the one-year statute because – or I say statute, the one-year notice requirement. It is true that this has been interpreted at least as to fraudulent signatures on the check, not endorsements. But when you actually sign the check, that applies one year after you receive your statement. That's pretty well established. Am I correct on that? Yes, John. So if that's true, then why are we going to impose – maybe this is a softball question to you – but why are we then going to impose a discovery rule on endorsements when the signatures are clearly applicable to a one-year right out of the gate? We don't look at whether they should have known that there was a fraudulent signature. We just assume – or at least the case law assumes that they know, and therefore one year applies. I think you can't. The statute says one year, and the case that really helps the court on this point is Hughes Electronics. But here's the one thing that concerns me, is Comment 5 to the statute, 24406, says there's no burden for endorsements. And so that does seem like something that you could hang your hat on to say endorsements are different. And as I understand it, that's never been interpreted. No one's ever looked at Comment 5 specifically, but it's there. How do you explain that Comment 5 being as part of 4406? Well, we have an interesting argument from the appellant with 4406 in that the appellant talks about 4406 a lot and then says that 4406 doesn't bar the appellant's case because 4406 doesn't apply here. Well, that's right, because it doesn't apply here. 4406. So are you arguing that for endorsements, the time runs from – you need to be arguing then that the time runs from the actual forgery and that these statements don't even matter? I think California law is clear that the statute runs from the statement without regard to whether it's an endorsement. But you just agree that it doesn't say that. In 4406, but this isn't a 4406 case. This is a CCC 340 case. Well, what does say that? What does say that? Civil Code Section 340 says the appellant has 20 years. No, it says it runs from – one would think it would run from the forgery because the statement is a forgiving rule, i.e. it says, well, there's no way you would know – we're going to ascribe the knowledge to you from the statement, but not before that. Well, if the statement's irrelevant, then why aren't we just back to the actual forgery? I would be fine with that rule, but the case is – But how can that be? I mean, I don't know – if you don't recognize that 4406 says it can't run from the actual forgery because how would anybody know, right? Then it says the statement, but it says it only with regard to the drawers. And then it says nobody – people don't have a responsibility to know about the endorsement. So where are you getting the notion that the endorsement runs from the – either from the forgery or from the statement? That takes us back to the Hughes Electronics case because what Hughes did – I'm going to say the same thing to you as I said to him. Hughes Electronics was about something else. In large part, it was, but Hughes Electronics is very helpful because it talks about the legislative history of the one-year statute in 340 vis-à-vis 4406, which is several of your honest questions. And what Hughes Electronics explains is that 340, the one-year statute, predates the commercial code by decades. And when the commercial code was first promulgated, the version of 446 that was proposed by the Uniform Commission had a split notice period where it was one year for the customer to report to the bank claims that a maker's signature was forged and three years for the customer to report to the bank that an endorsement on a check was forged. And what the California legislature did was look at that, and there were recommendations that were adopted that said the preexisting California statute that gave the customer one year to discover and report either a forged maker's signature or a forged endorsement has proven to be satisfactory in practice and that the existing California rule of one year to discover and report should be maintained. And that's what happened. That portion of 446 – But the current statute is very specific. 446 is, but the point is that 340 did not change. Right. The recommendation adopted by the California legislature – But the history you're talking about is the history of 406. The interplay between the two is what the court talked about in Hughes Electronics, where the conclusion of the California legislature was to reject the rule of 446, which would have given a longer statute of limitations for forged endorsements or a longer notice period for forged endorsements. Right. And instead to preserve the existing California rule that a customer has one year to discover and report – But that's 406. It's not 340. That's saying that we choose to maintain the existing rule in 340 rather than go with the change proposed by 446. At that time, did 406 have this provision that was very specific as to the maker as opposed to the endorser? The national version of 446 had a split notice provision. I know. But did the California version, say, have the language that was limited to the maker? Not in the 1972 version. No, it didn't. But now it does. Well, to try and reconstruct this, if I am, page 36, footnote 10, it appears that the appellants actually agree with what you're saying. We'll maybe get this in rebuttal. Except that they add, however, when the new code was adopted, and I'm not entirely sure I understand what the new code was, California declined to add that non-uniform comment about the one-year bar and adopted comment 5, stating the depositor has no duty to discover forged endorsements, reflecting a change from prior practice. So this does apparently bring us back to my initial question about how do you square up comment 5 from 4406, and I guess I'm going to ask them to explain footnote 10 to me, because if they're right on footnote 10, that seems, in my mind, to be pretty compelling. Yeah, and what the Hughes Electronics Court concluded was that the legislature never intended to change. So you think that that's just a misstatement in footnote 10 about the new code changing and adopting comment 5? No, a comment to a statute having to do with notice to the bank did not change the statute. Well, but there's an implication here that California changed its practice after comment 5 was added to 4406. California has not. Okay. So you agree 4406 applies only to the bank customer, not the, excuse me, for the customer signature and not to endorsements, right? That's correct. But California courts have looked at 4406 in the context of the bank customer, and it seems like 4406 is premised on the idea that the person who signed the check, when he or she receives this bank statement and sees a copy of the check, would recognize his or her own signature. I mean, it seems like that's the rationale behind it. You get a statement. You'll know if it's your signature or someone else's signature or if someone said instead of $1,000, put $100,000. So if we apply that rationale here, it seems like you would need to give some kind of notice to recognize whether the endorsement was fraudulent and who best, I don't want to sound like Judge Posner, but who would best be able to figure that out. It wouldn't be the person who wrote the check. I mean, he or she would have no idea who signed the endorsement, whether that's real or not, or forged. It would be the bank. The bank could insist if it's an $800,000 check, if you're cashing it, give me your ID. Let me check your ID, your signature with your driver's license, whatever it may be. I mean, why isn't that the sensible rule here? That would be the bank of first deposit, not the bank on which the check is drawn. California Bank and Trust does not deal with the depositor. California Bank and Trust is not in a position to validate endorsements anyway. But I think the answer to that is what was said in the legislative history as cited in Hughes and the facts of our case, that the one-year statute has proven to be satisfactory in practice, even with regard to forged endorsements, that yet you might not know it immediately. How can you say that when there's no cases on forged endorsements? I mean, how do we know it's been effective in practice? Because electronics is a forged endorsement case. This is a forged endorsement case. Can I just ask? Your time is just about out, and I do want to be tough on it. But one question. What is the rule you're arguing for specifically? Is it that the time runs from the statement, even if the statement doesn't tell you anything, or that the time runs from the forgery, or that the time runs from some inquiry notice, or what? That the statute runs from the date of the statement, just whether it's the statute treats the two the same. Where do you possibly get that rule from? I mean, 406, I mean, you're better ground to say it runs from the forgery, because if you say it runs from the statement, you have to be incorporating 406, even though 406 specifically doesn't apply. So which rule are you arguing for? There are numerous California cases saying that the statute runs from the statement, particularly with regard to forged maker signatures, and I see no reason to argue for a shorter time period with regard to forged endorsements. But the statement is of absolutely no use. Is that right? Well, back in the days when the statement included copies of canceled checks, you then have the ability to look at the back. But I would argue for that rule, because as in practice, we've seen that even though you won't know a forged endorsement just by turning the check over and looking at the back, your payee is going to be on the phone in far less than a year if your payee didn't get the money. In this case, Deakin was not just on inquiry notice but had actual notice and was ready to file a complaint with six months to spare on the one-year statute with no tolling. Okay. Thank you very much for your argument. Thank you. We'll give you one minute. I will be there. I will try to even be shorter than that to address your question about what that is. So what the specific provision states in the comments is several changes are made to former sections. This is in the California comment. That's correct. Right. Several changes are made in former section 44065. First, former section 5 is deleted and its substance is made applicable only to the one-year notice preclusion in former subsection 4, meaning subsection F. Now we're talking about forged drawer signatures. Thus, if a drawer has not notified a payor bank of an unauthorized check or material alteration within one year, the payor bank may not choose to recredit the drawer's account. It goes on to say, second, and this is the key thing, the reference in former section 4 to unauthorized endorsements is deleted. Section 4406 imposes no duty on the drawer to look for an unauthorized endorsement. And that's in 340, not 4406. No, that's the comment in 4406. Oh, I know. Okay. But I want, okay. Okay. Fair enough. All right. Thank you very much. Thank you very much. Thank you very much for your argument. The case of Navigation Specialty Insurance v. California Bank and Trust is submitted.
judges: Berzon, Nelson, Lee